ANISHA DASGUPTA, General Counsel
CARLA L. CHEUNG, Cal. Bar No. 291562
ccheung1@ftc.gov
DAVID HANKIN, Cal. Bar No. 319825
dhankin@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

*Attorneys for Plaintiff Federal Trade Commission*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Petitioner,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL,<br><br>Respondent. | Case No. 2:24-cv-1112<br><br>PETITION OF THE FEDERAL TRADE COMMISSION TO ENFORCE A CIVIL INVESTIGATIVE DEMAND |

**PETITION OF THE FEDERAL TRADE COMMISSION TO ENFORCE A CIVIL INVESTIGATIVE DEMAND**

The Federal Trade Commission ("FTC" or "Commission"), pursuant to Section 20 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 57b-1, respectfully petitions this Court to issue an order to show cause and thereby commence proceedings to enforce a civil investigative demand ("CID") issued to Respondent MGM Resorts International ("MGM") on January 25, 2024.  The CID, a form of administrative compulsory process, seeks documents and information relevant to an ongoing investigation into whether MGM's data security practices comply with (i) Section 5 of the FTC Act, 15 U.S.C. § 45 et seq., (ii) the Standards for Safeguarding Customer Information Rule ("Safeguards Rule"), 16 C.F.R. Part 314, issued

pursuant to Title I of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801 et seq., and (iii) the Duties Regarding the Detection, Prevention, and Mitigation of Identity Theft ("Red Flags Rule"), 16 C.F.R. § 681.1(d), issued pursuant to Section 621 of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s. MGM has refused to comply with the CID.

The Commission has made no prior application to any court for similar relief and now seeks the aid of this Court through a summary proceeding to enforce the CID. Judicial enforcement is necessary so that FTC staff may thoroughly and expeditiously conduct its investigation. As set forth below, the FTC has met all of the requirements for judicial enforcement of the CID. Therefore, the FTC respectfully asks this Court to issue an order requiring MGM to appear and show cause why it should not comply with the CID and thereafter grant the FTC's petition and enter an order compelling MGM to produce the documents and information specified in the CID.

The Commission herewith submits the Declaration of David Hankin, designated as Petitioner's Exhibit (Pet. Ex.) 1, to verify the allegations herein. The Commission also submits the following additional exhibits:

| | | |
|---|---|---|
| Pet. Ex. 2 | | Resolution Directing Use of Compulsory Process in Non-Public Investigations of Acts and Practices Related to Consumer Privacy and/or Data Security (FTC File No. 1823036); |
| Pet. Ex. 3 | | Resolution Directing Use of Compulsory Process in Non-Public Investigations of Unnamed Persons, Partnerships, Corporations, or Others Engaged in Acts or Practices in Violation of Title V of The Gramm-Leach-Bliley Act, Its Implementing Rules, and/or Section 5 of The FTC Act (FTC File No. 0023284); |
| Pet. Ex. 4 | | Resolution Directing Use of Compulsory Process in Non-Public Investigations Into The Acts and Practices of Unnamed Persons, Partnerships and Corporations Engaged In Acts or Practices In Violation of 15 U.S.C. §1681 Et Seq, and/or 15 U.S.C. §45 (FTC File No. 9923132); |
| Pet. Ex. 5 | | 2019 MGM Data Breach Notification |
| Pet. Ex. 6 | | 2022 MGM Data Breach Notification |
| Pet. Ex. 7 | | Civil Investigative Demand to MGM, January 25, 2024; |

| | | |
|---|---|---|
| Pet. Ex. 8 | | FedEx Delivery Confirmation, January 29, 2024; |
| Pet. Ex. 9 | | FTC Letter Modifying and Limiting CID, February 15, 2024; |
| Pet. Ex. 10 | | MGM's Petition to Limit or Quash the CID, February 20, 2024; |
| Pet. Ex. 11 | | Decision and Order Denying MGM's Petitions to Limit or Quash, April 1, 2024; and |
| Pet. Ex. 12 | | MGM Email to FTC Staff, April 15, 2024. |

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to enforce the Commission's duly issued CID under Sections 20(e) and (h) of the FTC Act, 15 U.S.C. §§ 57b-1(e), (h). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

2. Venue is proper in this judicial district under Section 20(e) of the FTC Act, 15 U.S.C. § 57b-1(e), because MGM is found, resides, and transacts business here. Pet. Ex. 1 at ¶3. Venue is also proper under 28 U.S.C. § 1391.

**THE PARTIES**

3. Petitioner FTC is an administrative agency of the United States, organized and existing under the FTC Act, 15 U.S.C. §§ 41 et seq. The FTC is authorized and directed by Section 5 of the FTC Act, 15 U.S.C. § 45, to prohibit "unfair or deceptive acts or practices in or affecting commerce." The Commission is also charged with enforcing the Safeguards Rule and Red Flags Rule, which require certain companies to safeguard consumer personal information and develop identity theft prevention plans. 15 U.S.C. §§ 6801(b), 6805(a)(7); 16 C.F.R. Part 314; 15 U.S.C. § 1681m(e); 15 U.S.C. § 1681s(a).

4. Sections 3 and 6(a) of the FTC Act, 15 U.S.C. §§ 43 & 46(a), authorize the Commission to "prosecute any inquiry necessary to its duties in any part of the United States," and to "gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices and management of, any person, partnership, or corporation" subject to the Commission's jurisdiction. Section 20(c) of the FTC Act, 15 U.S.C. § 57b-1(c), authorizes the Commission to issue CIDs that require the recipients to produce

documents, prepare answers to interrogatories, and provide oral testimony under oath, relating to the subject of any Commission investigation.

5. Respondent MGM is a publicly traded, international operator of hotels, casinos, and entertainment venues with its principal place of business in Las Vegas, Nevada. It also offers online gaming and sports betting through a subsidiary, LV Lion Holding Limited, and a joint venture, BetMGM, LLC. Pet. Ex. 1 at ¶3.

6. MGM casinos extend lines of credit to qualified casino patrons through credit instruments called casino "markers." *See, What Can Casino Markers Be Useful For?*, BETMGM BLOG, September 26, 2023, https://casino.betmgm.com/en/blog/what-can-casino-markers-be-useful-for/ (last visited June 13, 2024) (hereinafter, "BetMGM Blog").

**THE COMMISSION'S INVESTIGATION AND CIVIL INVESTIGATIVE DEMAND**

7. Since 2019, MGM has experienced at least three publicly reported data security breaches implicating consumers' personal information, the most recent occurring in September 2023. Pet. Ex. 1 at ¶5; Pet. Ex. 5 at 1; Pet. Ex. 6 at 1; Pet. Ex. 10 at 1. Following the September 2023 breach (the "2023 Breach"), the Commission launched an investigation into MGM's acts and practices relating to the privacy and/or data security of its consumers. Pet. Ex. 1 at ¶6.

8. The Commission has promulgated three resolutions which authorize its staff to investigate various potential violations of the FTC Act and to use compulsory process to secure information related to these potential violations. The first resolution, File No. 1823036, authorizes the use of compulsory process to investigate "deceptive or unfair acts or practices related to consumer privacy and/or data security" in violation of Section 5 of the FTC Act. Pet. Ex. 2. The second and third resolutions, File Nos. 0023284 and 9923132, authorize the use of compulsory process to investigate violations of the Safeguards Rule and Red Flags Rule, respectively. Pet. Exs. 3-4.

9. On January 25, 2024, under the authority of these resolutions,[1] the Commission

---

[1] The CID includes a copy of Resolution File No. 992-3120, which authorizes the FTC to investigate violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and/or Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. It has been updated by Resolution File No. 9923132.

1  issued a CID to MGM, requiring it to provide specified documents and information by February
2  26, 2024.  Pet. Ex. 1 at ¶ 9; Pet. Ex. 7 at 3.  The CID was served on MGM's agent for service of
3  process, and FTC staff emailed a courtesy copy to MGM directly.  Pet. Ex. 1 at ¶12.  Counsel for
4  MGM acknowledged receipt on January 29, 2024.  *Id.* at ¶13.

5        10.    On February 14, 2024, FTC staff afforded MGM an opportunity to propose an
6  extended schedule to produce the requested materials and information, but MGM declined to do
7  so.  *Id.* at ¶14.

8        11.    On February 15, 2024, following discussions between FTC staff and MGM, FTC
9  staff agreed to modify several specifications of the CID and to limit others.  Pet. Ex. 9.

10        12.    On February 20, 2024, MGM filed a petition to quash or limit ("PTQ") the CID,
11  claiming, *inter alia*, that MGM is not subject to the Safeguards Rule or Red Flags Rule
12  (collectively, the "Rules") and that the CID is unduly burdensome.  Pet. Ex. 10 at 4-6, 10-13.

13        13.    On March 18, 2024, while the PTQ was pending before the Commission,[2] MGM
14  filed a petition to recuse or disqualify Chair Khan from participating in the Commission's
15  response to the PTQ.  Pet. Ex. 11 at 15.

16        14.    On April 1, 2024, the Commission issued a Decision and Order denying both
17  petitions as without merit and imposing a deadline to comply with the CID by April 15, 2024, a
18  deadline that MGM could negotiate with FTC staff as authorized by 16 CFR § 2.7(l).  *Id*.

19        15.    On April 4, 2024, FTC staff offered to meet with MGM to establish a production
20  schedule for compliance with the CID, but MGM declined the invitation.  Pet. Ex. 1 at ¶19.  On
21  April 15, 2024—the deadline for compliance—MGM emailed FTC staff, stating: "MGM
22  respectfully stands on its positions asserted in its Petitions to the Commission."  *Id.* at ¶20; Pet.
23  Ex. 12.

24        16.    The same day, MGM filed a complaint in the United States District Court for the
25  District of Colombia seeking injunctive and declaratory relief against the Commission and Chair

---

[2] At that time, the Commission consisted of Chair Khan and Commissioners Slaughter, Bedoya, and Holyoak. According to the Decision and Order, Commissioner Holyoak did not participate in considering the petitions. Pet. Ex. 11, p. 15.

Khan. *MGM Resorts International v. Federal Trade Commission et al,* No. 1:24-cv-01066 (D.D.C. 2024); Pet. Ex. 1 at ¶21.

17. To date, MGM has failed to provide any documents or responses to interrogatories. Pet. Ex. 1 at ¶23. Respondents' failure to comply with the CID has materially impeded the Commission's ongoing investigation. *Id.* at ¶24.

## MEMORANDUM OF POINTS AND AUTHORITIES

In September 2023, MGM experienced its third publicly known data breach in four years. Thereafter, the Commission opened an investigation and issued a CID to MGM seeking information regarding whether MGM's data security and privacy practices constitute "unfair or deceptive acts or practices in or affecting commerce" in violation of Section 5 of the FTC Act and violate the Safeguard Rule or Red Flags Rule (together, the "Rules"). To impede the Commission's investigation, MGM has refused to comply with the CID and filed a declaratory judgment lawsuit attempting a preemptive strike against an FTC action to enforce the CID. The FTC will respond to that filing in due course and show why MGM's suit is improper. But nothing that MGM alleges in that complaint or that MGM might claim here undermines the FTC's authority to obtain in this proceeding the information it needs for its investigation. As detailed below, the FTC has satisfied the test for enforcement of its compulsory process. For these reasons, the Court should grant the FTC's Petition and enforce the CID.

## LEGAL STANDARD FOR ENFORCEMENT

An action to enforce administrative compulsory process[3] is properly instituted by a petition and order to show cause (rather than by complaint and summons), is summary in nature, and "designed to allow 'speedy investigation of [agency] charges.'" *EEOC v. Karuk Tribe Hous. Auth.,* 260 F.3d 1071, 1078 (9th Cir. 2001). Discovery or evidentiary hearings are generally not permitted, save in extraordinary circumstances. *FTC v. Carter,* 636 F.2d 781, 789 (D.C. Cir. 1980).

---

[3] An FTC CID is a form of administrative subpoena. *See, e.g., FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1087 (D.C. Cir. 1992).

The Court's function in such proceedings is to determine "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012) (quoting *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir.1983) (en banc), abrogated on other grounds, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)); *see also EEOC v. Fisher Sand & Gravel, Co.*, No. 2:12-cv-0649-JCM-CWH, 2012 WL 3996138, *1 (D. Nev. Sept. 11, 2012) (same); *accord United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[I]t is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant.").

With respect to the relevance element, the information requested is subject to a "broad" and "relaxed" standard that applies in administrative investigations. *See Invention Submission*, 965 F.2d at 1090; *Phelps v. Soc. Sec. Admin., Office of the Inspector Gen.,* No. 8CV2092-L (BLM), 2009 WL862167, at *1 (S.D. Cal. Mar. 26, 2009) (citing *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Ed.*, 878 F.2d 875, 14 882 (5th Cir. 1989)).

The government's burden to meet these requirements requires only a "prima facie showing" and can be demonstrated by an affidavit of a government official. *FDIC v. Garner,* 126 F.3d 1138, 1143 (9th Cir. 1997). When these requirements are met, courts "must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *Golden Valley,* 689 F.3d at 1113-14 (quoting *Karuk Tribe Hous. Auth.*, 260 F.3d at 1076). See also *Children's Hosp. Med. Ctr.*, 719 F.2d at 1428 ("If these factors are shown by the agency, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome") (citing *Okl. Press Publ'g Co. v. Walling*, 327 U.S. 186, 217 (1946)). [4]

---

[4] Courts apply the same legal standards to petitions to enforce CIDs under Section 20 of the FTC Act as those governing enforcement of the FTC's and other agencies' administrative subpoenas. *See, e.g., FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001); *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 367-68 (7th Cir. 1983); *FTC v. Response Makers, LLC*, No. 3:10cv-1768-WQH-

**ARGUMENT**

The Commission has satisfied the requirements for judicial enforcement of its CID: the Commission has the authority to conduct the investigation, it has complied with all procedural requirements, and the CID seeks documents and information relevant to the investigation. Accordingly, the CID should be enforced without delay.

**I.   THE COMMISSION HAS THE AUTHORITY TO CONDUCT THE INVESTIGATION**

The Commission lawfully and properly issued the CID as part of an investigation into whether MGM violated the FTC Act, the Safeguard Rule, and the Red Flags Rule. Congress granted the FTC broad authority to investigate acts or practices that may violate the FTC Act's proscription against "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a); *see id.* § 43 (empowering the FTC to "prosecute any inquiry necessary to its duties in any part of the United States"); and *id.* § 46(a) (authorizing the FTC "[t]o gather and compile information concerning, and to investigate . . . the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce"). Furthermore, Congress gave the FTC the authority to draft and enforce the Safeguards and Red Flags Rules. *See* 15 U.S.C. §§ 6801(b), 6805(a)(7); 16 C.F.R. Part 314; 15 U.S.C. § 1681m(e); 15 U.S.C. § 1681s(a). The Safeguards Rule requires certain companies, their affiliates, and their service providers to safeguard customer information in their possession. 16 CFR § 314.3(a), 16 CFR § 314.4. The Red Flags Rule requires certain companies to implement a written identity theft prevention program. 15 U.S.C. § 1681m(e).

For the FTC to determine if violations of laws it enforces have occurred, Section 20 of the FTC Act authorizes the Commission to issue a CID to any person who may have documents or other information relevant to potential violations. *Id.* § 57b-1(c)(1). The FTC "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642–43.

---

BLM, 2010 WL 4809953, *1-2 (S.D. Cal., Nov. 19, 2010); *FTC v. Nat'l Claims Svc., Inc.*, No. S 98-283-FCD-DAD, 1999 WL 819640, *1 (E.D. Cal., Feb. 9, 1999).

The CID falls squarely within these grants of authority. The materials and information requested by the CID are needed in connection with an investigation into whether MGM's information security practices—including its identity theft detection, prevention, and mitigation practices, and representations about those practices—involve unfair or deceptive acts or practices that violate Section 5 of the FTC Act, the Safeguards Rule, and the Red Flags Rule. In issuing the CID, the Commission acted under three resolutions authorizing the issuance of compulsory process to investigate the conduct at issue here. Thus, the Commission unequivocally is authorized to conduct the investigation and issue the CID at issue.

## II.     THE CID WAS DULY ISSUED

The CID comports with the procedural requirements of the authorizing statute and its implementing FTC Rules of Practice in the following ways:

- The CID satisfies the FTC Act's requirements of "definiteness and certainty" because it specifies the kinds of documents and information to be produced. 15 U.S.C. §§ 57b-1(c)(3)(A), (c)(5)(A), 16 C.F.R. § 2.7(b)(1), (b)(3). *See also* Pet. Ex. 7 at 5-15.
- The CID prescribed a return date of 30 days after issuance, giving Respondents a "reasonable period of time" to assemble the specified documents and prepare their responses to Interrogatories. 15 U.S.C. §§ 57b-1(c)(3)(B), (c)(5)(B), 16 C.F.R. § 2.7(b)(1). *See also* Pet. Ex. 1 at ¶ 7; Pet. Ex. 7 at 3. On February 14, 2024, FTC staff afforded MGM an opportunity to propose an extended schedule to produce the requested materials and information, but MGM declined to do so. Pet. Ex. 1 at ¶14.
- The CID also identified to whom and how MGM should send the requested documents and responses. *See* 15 U.S.C. §§ 57b-1(c)(3)(C), (c)(5)(C), 16 C.F.R. § 2.7(b)(1), (b)(3). *See also* Pet. Ex. 7 at 3.
- The CID was "signed by a Commissioner", in this case Chair Lina Khan, "acting pursuant to a Commission resolution." 15 U.S.C. 57b-1(i). *See also* Pet. Exs. 2-4; Pet. Ex 7 at 3.
- The CID was properly served. *See* 15 U.S.C. §§ 57b-1(c)(9)(A), (c)(10). *See also* Pet.

Ex. 1 at ¶12; Pet. Ex. 8.

- The CID included copies of the Commission's Compulsory Process Resolutions, giving MGM adequate notice of "the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." 15 U.S.C. § 57b-1(c)(2); 16 C.F.R. § 2.6; Pet. Exs. 2-4; Pet. Ex. 7 at 30-33. *See FTC v. O'Connell Assocs., Inc.*, 828 F. Supp. 165, 170-71 (E.D.N.Y. 1993) (notice Requirement is met by "cit[ing] to a resolution giving the FTC authority to use compulsory process.").

## III. THE EVIDENCE SOUGHT IS RELEVANT TO THE INVESTIGATION

The threshold for relevance is easily met. So long as the requested information "touches a matter under investigation," it will survive a relevancy challenge. *Sandsend Financial Consultants*, 878 F.2d at 882 (quoting *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982)). The FTC's determination that information is relevant to its investigation should be accepted unless the Respondent can prove that it is "obviously wrong." *Invention Submission*, 965 F.2d at 1089-1090.

Here, the CID seeks information relevant to the investigation's purpose to determine whether MGM engaged in "unfair or deceptive acts or practices" in violation of Section 5 of the FTC Act by failing to take reasonable steps to protect consumers' personal information, live up to its own representations about data privacy and security, or take reasonable steps to prevent harm to consumers. Such failures have regularly been the subject of FTC enforcement actions for violations of Section 5. *See F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 247 (3d Cir. 2015) (finding that company's alleged failure to maintain reasonable and appropriate data security could constitute an unfair method of competition in commerce). *See also, In the Matter of Drizly, LLC et al.*, FTC Matter No. 2023185; *In the Matter of Chegg, Inc.*, FTC Matter No. 2023151 (alleged failures to protect consumers' personal information and making deceptive statements about their data security); *In the Matter of Blackbaud, Inc.*, FTC Matter No. 2023181 (alleged failure to prevent unauthorized access to sensitive consumer data, implement and enforce reasonable data retention practices, or accurately communicate the scope and severity of the breach).

1   Specifically, the CID seeks information regarding MGM's corporate structure and
2   operational control (Specifications 1-7, 33-38, 50, 52)[5], information security practices
3   (Specifications 8-21, 39-41, 43-45, 47, 49, 51, 53), and the 2023 Breach and the exposure of
4   consumers information (Specifications 22-29, 46, 48). Pet. Ex. 1 at ¶8; Pet. Ex. 7 at 5-15.  Each
5   of these topics—constituting all but four of the CID's specifications—is directly relevant to the
6   investigation of possible Section 5 violations.  The above topics are likewise relevant to
7   determining whether MGM is subject to, and in compliance with, the Safeguards Rule
8   requirements to protect the security of customer information—an inquiry that overlaps with the
9   Section 5 investigation.

And the CID includes four additional specifications (Specifications 30-32 and 42) bearing on the Red Flags Rule, which requires certain businesses to implement a written identity theft prevention program.  Tracking the provisions of that Rule, these four specifications seek information concerning whether MGM obtains consumer reports in connection with credit transactions, advances funds, and has developed and trained staff on identity theft prevention measures—and thus are plainly relevant to that aspect of the investigation.  *See* Pet. Ex. 7 at 12-14.  Specification 30 is likewise relevant to whether the Safeguards Rule applies because it asks whether MGM advances funds, which is an element of both Rules.  *See id.*; *supra* Section IV.A.2.

**IV.   MGM HAS NO VALID BASIS FOR REFUSING TO COMPLY WITH THE CID**

   **A.   MGM's Objection to the CID's Requests for Relevant Information is Baseless**

MGM may argue, as it did in its PTQ, that it is not the type of entity subject to the Safeguards Rule and Red Flags Rule (respectively, a "financial institution" or "creditor") and therefore the CID is improper.  That argument is meritless.  In the first instance, MGM's jurisdictional objection has no bearing on the CID's requests for information relevant to unfair or

---

[5] These Specifications seek information concerning MGM's structure and operations (e.g., its subsidiaries, number of employees, gross revenue, and key data security personnel), the products and services MGM offers, and what types of customer personal information it keeps. *See* Pet. Ex. 7 at 5-6, 13-15. These topics are relevant to understanding whether MGM's data security protocols are reasonable (Section 5 of the FCT Act), and appropriate to the size and complexity its business, the nature and scope of its activities, and the sensitivity of the information at issue (Safeguards Rule).

11

deceptive acts or practices violating Section 5 of the FTC Act, and MGM cannot deny that it is subject to the FTC Act.  Moreover, as the Commission explained in denying the PTQ, the FTC's broad authority to investigate and enforce the Rules necessarily includes the authority to investigate *whether* MGM is a "financial institution" or a "creditor" under the Rules.  Pet. Ex. 11 at 3-4.  Additionally, as the Commission further found, there is ample reason to doubt MGM's claim that it is not covered by the Safeguards and Red Flags Rules.  *Id.* at 4-8.

### 1. The Commission Has the Jurisdiction to Investigate <u>Whether</u> MGM is Subject to the Rules

Administrative agencies have "wide latitude in asserting their power to investigate by subpoena," and "an individual may not normally resist investigative process on the ground that an agency lacks regulatory authority."  *Ken Roberts Co.*, 276 F. 3d at 586 ("courts of appeals have consistently deferred to agency determinations of their own investigative authority, and have generally refused to entertain challenges to agency authority in proceedings to enforce compulsory process.").  This is because an agency's "jurisdiction to determine whether it has jurisdiction is as essential to its effective operation as is a court's like power."  *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973).  Accordingly, "each independent regulatory administrative agency has *the power to obtain the facts requisite to determining whether it has jurisdiction over the matter sought to be investigated.*"  *Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 434 (9th Cir. 1975) (emphasis added).  *See XYZ Law Firm v. FTC*, 525 F. Supp. 1235, 1237–38 (N.D. Ga. 1981) (rejecting argument that FTC could not investigate a target for potential violations of the Fair Debt Collection Practices Act because the target contended it fell under the statute's exemption for attorneys).

As the Commission explained in its order denying MGM's PTQ, the Commission has the authority to investigate whether MGM falls under the Rules because it has the "power to obtain the facts requisite to determining whether it has jurisdiction over the matter sought to be investigated."  *Fed. Mar. Comm'n*, 521 F.2d at 434.  The CID here seeks such information.  Specification 30, for instance, demands that MGM "[s]tate whether [MGM] regularly and in the ordinary course of business . . . [a]dvances funds"—an element under the Rules.  *See* Pet. Ex. 7 at

12

12; *supra* Section IV.A.2. Accordingly, neither the Court nor the FTC need decide now whether in fact the Rules apply to MGM. The Court should instead enforce the CID to permit the FTC to discover the facts necessary to make this determination.

### 2. In Any Case, MGM Is Likely Subject to the Rules Because It Extends Customers Lines of Credit For Gambling

Even though the Court need not make this determination now, MGM is likely subject to the Rules because it extends credit instruments called "markers" to customers to permit them to gamble on credit. The Safeguards Rule applies to "financial institutions," which means an "institution that is significantly engaged in financial activities, or significantly engaged in activities incidental to such financial activities." 16 C.F.R. § 314.2(h)(1). The Safeguards Rule borrows the definition of "financial activities" from the Bank Holding Company Act of 1956, which defines financial activities to include "[l]ending [or] exchanging" money. *Id.* (citing 12 U.S.C. § 1843(k)(4)(A).)

The Red Flags Rule applies to certain creditors, that is, (1) "any person who regularly extends, renews, or continues credit",[6] (2) "that regularly and in the ordinary course of business":

    a.    "obtains or uses consumer reports, directly or indirectly, in connection with a credit transaction;"

    b.    "furnishes information to consumer reporting agencies;" or

    c.    "advances funds to or on behalf of a person, based on an obligation of the person to repay the funds or repayable from specific property pledged by or on behalf of the person,"

except for someone that "advances funds on behalf of a person for expenses incidental to a service provided by the creditor to that person." 16 C.F.R. § 681.1(a) (citing 15 U.S.C. § 1681m(e)(4) (citing 15 U.S.C. § 1691a(e)).

---

[6] "Credit" means "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. §§ 1681a, 1691a(d).

The Rules overlap significantly. The Safeguards Rule applies to companies "significantly engage[d]" in "[l]ending … money," and the Red Flags Rule covers companies that "regularly extend[] … credit" and "regularly and in the ordinary course of business … advance[] funds." 16 C.F.R. § 314.2(h) (citing 12 U.S.C. § 1843(k)); 16 C.F.R. § 681.1(b)(5) (citing 15 U.S.C. § 1681m(e)(4)).

Publicly available information strongly indicates that MGM is subject to the Rules because it is significantly engaged in lending money, and advances funds regularly and in the ordinary course of business. In MGM's own words: "A casino marker is essentially a line of credit provided by a casino to a player. It allows you to borrow money from the casino to use for gambling purposes, kind of like a short-term loan for gaming." *See* BetMGM Blog. Consumers who wish to acquire a marker must first establish a line of credit with the casino by completing a credit application, providing financial information, and authorizing a credit check. *Id.* MGM then assesses the applicant's creditworthiness, and if approved, will issue the marker. *Id.* When the marker is executed by a consumer, the casino will issue "casino chips or funds equivalent to the amount … asked for." *Id*.

Additionally, MGM also refers to markers as credit instruments in public filings with federal regulators. In its most recent annual SEC filing, MGM stated:

> *We extend credit to a large portion of our customers* and we may not be able to collect gaming receivables. *We conduct a portion of our gaming activities on a credit basis through the issuance of markers* which are unsecured instruments. Table games players typically are issued more markers than slot players, and high-end players typically are issued more markers than patrons who tend to wager lower amounts. High-end gaming is more volatile than other forms of gaming, and variances in win-loss results attributable to *high-end gaming may have a significant positive or negative impact on cash flow and earnings* in a particular quarter. Furthermore, the loss or a reduction in the play of the most significant of these high-end customers *could have an adverse effect on our business, financial condition, results of operations and cash flows*. We issue markers to those customers whose level of play and financial resources warrant, in the opinion of management, an extension of credit. Uncollectible receivables from high-end customers could have a significant impact on our results of operations.

MGM Resorts Int'l, Annual Report (Form 10-K) (Feb. 23, 2024), https://www.sec.gov/Archives/edgar/data/789570/000078957023000008/mgm-20221231.htm ("Form 10-K") (emphasis added).

Such public statements by MGM underscore the need for a thorough investigation to determine whether, in fact, MGM is subject to the Rules.

**B. The CID Is Neither Overbroad Nor Unduly Burdensome**

MGM also may argue here, as it did to the Commission, that the CID is unduly burdensome. Given the Commission's prima facie showing that it is entitled to enforcement of its CID, MGM bears to burden to "prove[s] the inquiry is unreasonable because it is overbroad or unduly burdensome." *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir. 1996). MGM cannot make that showing.

The CID is not overbroad. The CID requires MGM to respond to 38 document requests and 15 interrogatories on subjects readily available to it—its corporate structure and operational control, security practices, the 2023 Breach and its exposure of consumer's personal information, and MGM's identity theft detection, prevention, and mitigation practices. Pet. Ex. 1 at ¶8; Pet. Ex. 7 at 5-15. As described above, these specifications relate directly to the stated purposes of the investigation and thus are not overbroad. They are tailored to provide staff the information it needs to evaluate the MGM's conduct and thus go to the heart of the investigation.

Nor can MGM show that CID imposes an undue burden. "Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977); *see also FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980) ("the presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public interest"). "Thus, courts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *Texaco*, 555 F.2d at 882. "The burden of showing that the request is unreasonable is on the subpoenaed party and that burden is not easily met where the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose." *Id.* (citations omitted); *see FTC v. Standard American, Inc.*, 306 F.2d 231, 235 (3d Cir. 1962) (burden must be established with more than conclusory or unsupported statements); *see also FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981) ("The subpoenaed party may not merely utter the claim; it must persuade us.").

In its PTQ, MGM argued that the CID is unduly burdensome, notwithstanding FTC staff's modifications to the CID to address MGM's concerns. *See* Pet. Ex. 9; Pet. Ex. 10 at 10-13. The Commission rejected this argument as without merit, and so should this Court. The PTQ argued that the CID is unduly burdensome because compliance would require "significant investigation and analysis" and "substantial work" on the part of MGM's Chief Information Security Officer ("CISO") and other employees that would distract them from their ordinary duties. Pet. Ex. 10 at 10, 66. But, this argument falls short of the standard for showing undue burden. Mere distraction from ordinary duties and even substantial effort does not amount to the undue disruption or serious hindrance of normal business operations. *See Texaco, Inc.*, 555 F.2d at 882. The burden imposed here on MGM is the kind expected from any form of compulsory process.

Further, MGM's argument is inconsistent with its own statements and publicly available information—MGM is already obliged to collect, review, and report the type of information sought by the CID to private litigants and state and federal regulators. For example, the Nevada Gaming Control Board, in investigating licensure disciplinary matters, may require MGM to report the results of a cybersecurity investigation as well as impose other audit, recordkeeping, and reporting requirements. Nevada Gaming Control Board Regulation 5.260(4)-(7). Further, MGM is currently engaged in litigation in this District related to its 2019 and 2023 data breaches, in which it will likely have to produce similar information. *See Smallman v. MGM Resorts International*, U.S. D. Nev., Case No. 2:20-cv-00376-GMN-NJK; *Owens v. MGM Resorts International*, U.S. D. Nev, Case No. 2:23-cv-01480-RFB-MDC. According to MGM's most recent annual SEC filing, MGM's CISO provides quarterly reports and periodic updates on the Company's cybersecurity risks and enterprise cybersecurity program. *See* Form 10-K, p. 28. Additionally, MGM has voluntarily provided related information to law enforcement in connection with the 2023 Breach. Pet. Ex. 10 at 8. In light of the significant overlaps between MGM's existing reporting obligations and the CID's information requests, MGM cannot meet its burden of showing that compliance will "unduly disrupt or seriously hinder normal operations of [its] business." *Texaco,* 555 F.2d at 882.

## CONCLUSION

For the foregoing reasons, this Court should enter the attached show cause order commencing this proceeding and thereafter grant the Commission's petition and enter an order, substantially in the form filed herewith, requiring MGM to comply with the FTC's CID within 10 days of the entry of such order.

## PRAYER FOR RELIEF

WHEREFORE, the Commission invokes the aid of this Court and prays for:

a. Immediate issuance of an order, substantially in the form attached, directing Respondent to appear and show cause why it should not comply in full with the CID, and setting forth a briefing schedule pursuant to LR 16.1(c)(4); and

b. A prompt determination of this matter and entry of an order:

 (i) Compelling Respondent to produce the documents and information specified in the CID within ten (10) days of such order; and

 (ii) Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

ANISHA DASGUPTA,
General Counsel

MICHELE ARINGTON
Assistant General Counsel for Litigation

*/s/ Carla L. Cheung*
CARLA L. CHEUNG
ccheung1@ftc.gov
DAVID HANKIN
dhanking@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

Dated: June 17, 2024