Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
Emily A. Buchwald, Esq., Bar No. 13442
EAB@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100
Facsimile: 702.214.2101

Brian J. Boyle, Esq. (*pro hac vice forthcoming*)
Brian.boyle@us.dlapiper.com
DLA PIPER LLP
500 8th Street NW
Washington, DC 20004
Telephone: (215) 656-2450

Andrew Sacks, Esq. (*pro hac vice forthcoming*)
Andrew.sacks@us.dlapiper.com
DLA PIPER LLP
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104
Telephone: (206) 839-4890

Brett M. Feldman, Esq. (*pro hac vice forthcoming*)
Brett.feldman@us.dlapiper.com
DLA PIPER LLP
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-2448

*Attorneys for Respondent MGM Resorts International*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:24-cv-1112-JCM-MDC |
| Petitioner, | **MGM RESORTS INTERNATIONAL'S CROSS-MOTION TO DISMISS, TRANSFER, OR STAY PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE** |
| v. | |
| MGM RESORTS INTERNATIONAL | |
| Respondent. | |

Respondent MGM Resorts International ("MGM" or "Respondent") hereby cross-moves to dismiss, transfer, or stay the Petition to Enforce Civil Investigative Demand, Doc. No. 2, pursuant to the first-to-file rule and 28 U.S.C. § 1404(a), and responds in opposition to the Motion for Order to Show Cause, Doc. No. 3, brought by Petitioner Federal Trade Commission ("FTC," the "Commission", or "Petitioner"). This Cross-Motion and Opposition is based upon the accompanying memorandum of points and authorities, declaration, and the pleadings in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This action by the FTC is an improper collateral attack on ongoing litigation in the U.S. District Court for the District of Columbia over the same FTC Civil Investigative Demand ("CID") at issue here. *See MGM Resorts International v. FTC, et al.* Case No. 24-01066 (D. D.C.) (Bates, J.). As set forth below, MGM asks the Court for two types of relief. ***First***, by its Cross Motion, MGM requests that the Court dismiss, transfer, or stay the FTC's Petition to Enforce Civil Investigative Demand (Doc. No. 2) pursuant to the first-to-file rule, or transfer the matter pursuant to 28 U.S.C. § 1404(a). Such relief is warranted because litigation is already pending between MGM and the FTC over the very same issues in Washington, D.C., and dismissing the Commission's Petition, transferring it to D.C., or staying it pending resolution of the D.C. litigation would avoid duplicative litigation and serve the interests of justice and fairness. ***Second***, in the alternative, to the extent the Court intends to retain jurisdiction over this matter, MGM asks the Court to deny the FTC's Motion for Order to Show Cause (Doc. No. 3) because it violates the Court's Rules of Procedure. The FTC's Motion for Order to Show Cause was filed *ex parte*, contrary to the Local Rules.

### II.  FACTUAL BACKGROUND

The FTC's investigation, MGM's first-filed litigation in Washington, D.C., and this follow-on litigation in the District of Nevada, all share the same genesis: MGM's victimization by a group of hackers in September of 2023. The attack—which required that MGM shutdown critical IT infrastructure for a period of several days—cost MGM dearly, both financially and reputationally. The difficulty was compounded by the presence of the Chair of the FTC, Lina Khan,

1

1  at one of MGM's Las Vegas properties, a fact that MGM discovered after it was widely reported in
2  the press, along with an interview given by an anonymous "senior aide" to Chair Khan describing
3  how Chair Khan was personally affected by the attack. Per the press reports, Chair Khan sought to
4  check into MGM's hotel and, because MGM's systems were offline, was asked to write down her
5  credit card information on a piece of paper. (*See* Katrina Manson, *MGM was Hacked and Lina
6  Khan had to Write Her Credit Card Number Down on Paper*, Bloomberg (Sept. 15, 2023), attached
7  hereto as Cross-Motion Exhibit 1.)

8      Chair Khan's stay at the property was followed on January 25, 2024 by the FTC's CID. (*See*
9  CID, Petition Exhibit 7 (Doc. No. 2-9), at 2.) Notwithstanding the FTC's characterizations to the
10 contrary, the CID is sweeping in scope. It contains more than 100 separate requests for information
11 and documents and is premised in part on inapplicable financial services rules. More problematic
12 yet, the CID closely tracks the precise events involving Chair Khan, with certain requests seemingly
13 derived directly from her personal experience transacting business with MGM during the attack
14 (including the Chair having been asked to check-in on paper). Noting these problems with the CID,
15 and the ethical conflict presented by Chair Khan's personal knowledge of the attack, MGM moved
16 to quash the CID pursuant to FTC Rule of Practice 2.10 and to disqualify or recuse Chair Khan
17 pursuant to FTC Rule of Practice 4.17.  (*See* MGM Petition to Limit or Quash CID, Petition
18 Exhibit 10 (Doc. No. 2-12); *see also* MGM Petition to Recuse or Disqualify Chair Lina Khan,
19 attached hereto as Cross-Motion Exhibit 2.)

20     On April 1, 2024, the FTC, with Chair Khan participating, denied MGM's Petition to Quash.
21 (*See* Decision and Order Denying MGM's Petitions to Limit or Quash, Petition Exhibit 11
22 (Doc. No. 2-13).) The Final Order denying the Petition to Quash directed MGM to produce
23 information and records responsive to all 112 parts of the CID within *fourteen days* (on or before
24 April 15, 2024), including documents regarding a number of trade regulations that plainly do not
25 apply to MGM.  (*See id.* at 17.) The Final Order also disclosed that the FTC had refused to consider
26 MGM's Petition to Disqualify Chair Khan.  (*See id.* at 16 n.18.). Remarkably, Chair Khan even
27 participated in the Commission's rejection of the Petition to Disqualify her (in plain violation of
28 FTC Rule of Practice 4.17(b)(3)(ii)). (*See id.* at 16.)  The FTC's position is apparently that its Rules

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

of Practice do not provide any avenue for respondents such as MGM to seek disqualification or recusal of commissioners from petition to quash proceedings—even when a commissioner is personally involved in the facts under investigation.

Ultimately, having been denied a fair hearing—and without the prospect of any further action by the FTC to fulfil its obligation to provide a fair adjudication of MGM's challenge to the CID—MGM brought suit against the FTC on April 15, 2024, in the U.S. District Court for the District of Columbia. *See MGM Resorts Int'l*, Case No. 24-01066 (D.D.C.).[1] MGM's Complaint raises four constitutional due process claims, each of which is intertwined with the CID that the FTC now seeks to enforce in this action in the District of Nevada. (*See* Complaint for Declaratory and Injunctive Relief, attached hereto as Cross-Motion Exhibit 3.) Specifically, MGM challenges the constitutionality of the FTC's refusal to consider MGM's Petition to Disqualify Chair Khan; Chair Khan's participation in the FTC's investigation of MGM, despite her personal involvement in the events at issue; the FTC's unconstitutional and unprecedented attempt to enforce unambiguously inapplicable financial services regulations against MGM through the CID; and, the deprivation of due process caused by the FTC's insistence that MGM respond to its sprawling CID within fourteen calendar days. The FTC moved to dismiss on June 24, 2024, and the briefing is ongoing.

Against this backdrop—and months after commencement of the D.C. action—the FTC brought its Petition to Enforce Civil Investigative Demand in this Court on June 17, 2024. (*See* Petition (Doc. No. 2).) Contemporaneous with the filing of its Petition to Enforce, the FTC filed its Motion for an Order to Show Cause. (*See* Motion (Doc. No. 3).) In its Motion, the FTC asks the Court to lend its imprimatur to even greater restrictions on MGM's due process rights, including by entering a proposed order to show cause that (1) sharply limits MGM's ability to call live witnesses and introduce evidence in support of its position without imposing reciprocal restrictions on the FTC; (2) shifts the burden of proof from the FTC to establish the facts supporting the relief it seeks

---

[1] MGM's Complaint is properly before the District of Columbia, as the FTC is headquartered there and the events giving rise to the litigation took place there. The Court has subject matter jurisdiction pursuant to *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 195-96 (2023) (holding that a district court has subject matter jurisdiction to hear a constitutional challenge to an ongoing agency proceeding).

to MGM to *disprove* the factual basis of the Petition; and, (3) precludes MGM from raising procedural or other defenses to the Petition to Enforce. *See* Proposed Order to Show Cause (Doc. No. 3-1). On top of that, the FTC did so without serving the Petition or Motion on MGM, in violation of the District of Nevada's Local Rule of Practice concerning *ex parte* motions, *see* LR IA 7-2(b).

Having discovered the existence of the Petition to Enforce and the Motion on its own, MGM now opposes the Motion and cross-moves the Court for an order dismissing, transferring to the U.S. District of Columbia, or staying the Petition to Enforce.

## III. ARGUMENT

The Court should dismiss, transfer, or stay the Petition to Enforce pursuant to the first-to-file rule and 28 U.S.C. § 1404(a). And, alternatively, in the event the Court intends to retain jurisdiction, deny the FTC's Motion for Order to Show Cause.

**A. The Petition Should be Dismissed, Transferred to the District of Columbia, or Stayed Pending the Resolution of the D.C. Litigation pursuant to the First-to-File Rule.**

On April 15, 2024, MGM filed a lawsuit in the U.S. District Court for the District of Columbia challenging the FTC's CID. More than two months later, on June 17, 2024, the Commission filed its Petition in the District of Nevada. Because MGM's lawsuit was the first filed, concerns substantially the same parties, and substantially overlaps with the Petition, this Court should dismiss this matter, transfer it to the District of Columbia, or stay it pending resolution of the litigation in the District of Columbia.

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *see also* 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3854 (""[W]hen two courts have concurrent jurisdiction over a dispute involving the same parties and issues, as a general proposition, the forum in which the first-filed action is lodged has priority."). This rule provides a court the "discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *In re Bozic*, 888 F.3d 1048, 1051-52

4

(9th Cir. 2018); *see also Cardoza v. T-Mobile USA, Inc.,* No. 08–5120 SC, 2009 WL 723843, at *2 (N.D. Cal. Mar. 18, 2009) ("The first-to-file rule 'allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court.'" (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)). A court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues. *Kohn Law Grp. Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015); *see also Kutob v. L.A. Ins. Agency Franchising,* LLC, No. 18-1505, 2018 WL 4286171, at *1 (D. Nev. Sept. 7, 2018) (same). All three factors weigh decisively in favor of dismissing, transferring, or staying the FTC's Petition pursuant to the first-to-file rule.

The first two factors—chronology and similarity of parties—should be non-controversial. It is indisputable that MGM's Complaint in Washington, D.C. preceded the FTC's Petition by more than two months, and that the two separate cases concern materially the same parties. Specifically, MGM is Plaintiff in the Washington, D.C. action, and Respondent in the FTC's follow-on action in this Court. The FTC and Chair Lina Khan (in her official capacity) are Defendants in the Washington, D.C. action, and the FTC is the Petitioner in the action in Nevada.[2]

The third factor—similarity of issues—also weighs decisively in favor of applying the first-to-file rule. In order to satisfy this prong of the rule, the issues raised in the follow-on litigation need not be identical to the issues in the initial case; they need only be "substantially similar." *Kohn Law Grp.*, 787 F.3d at 1240. In order to assess whether the cases involve substantially similar issues, a court must "look at whether there is 'substantial overlap' between the two suits." *Id.* at 1241; *see also Fremont Emergency Services (Scherr), LTD v. UnitedHealthcare Ins. Co.*, No. 22-1118, 2023 WL 8556229, at *3 (D. Nev. Dec. 8, 2023) (noting that the similarity of issues element of the first-to-file rule "is satisfied even where different claims are advanced in each action, so long as the key dispute in each action is the same" (internal quotations omitted)). Here, it is clear that the issues

---

[2] Although Chair Khan is only a party in her official capacity in MGM's affirmative litigation, the parties are nevertheless substantially identical and more than sufficiently close for first-to-file rule purposes. *See Kohn Law Grp.*, 787 F.3d at 1240 ("Regarding similarity of the parties, courts have held that the first-to-file rule does not require exact identity of the parties . . . Rather, the first-to-file rule requires only substantial similarity of the parties." (internal citations omitted)).

5

raised by MGM's first-filed litigation and the FTC's follow-on action are substantially similar and warrant the application of the first-to-file rule.

MGM's first-filed Complaint contains four constitutional claims, which, at their core, challenge the FTC's CID, the FTC's authority to apply certain financial services rules to MGM through the CID, and the constitutionally improper manner in which the Commission has proceeded against MGM. By turn, the FTC filed its Petition in this Court on June 17, and it seeks an order compelling MGM to participate in the very same unconstitutional investigation that is at the center of MGM's Complaint. Any fair reading of the Complaint and the Petition reflects that the two pleadings raise the same essential question: is the FTC's investigation of MGM on legal *terra firma*? Indeed, if MGM prevails in its litigation in Washington, D.C., that will preclude the FTC from proceeding in this action.[3] As such, the similarity of issues prong is amply satisfied. *See U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 14-1461, 2015 WL 5765966, at *1-2 (D. Nev. Sept. 30, 2015) (granting motion to transfer pursuant to first-to-file rule upon finding that antitrust and patent claims substantially overlapped and that the question posed by the Nevada litigation was "at the heart" of the first-filed litigation pending elsewhere) (internal quotations omitted).

Indeed, although the first-to-file rule requires only that one case will "bear on the resolution of the other," the overlap here is considerably greater. *Fremont Emergency Services*, 2023 WL 8556229, at *3. If MGM prevails in the District of Columbia, that decision will "automatically vitiate" the FTC's later-filed action. *Id.* That is the case because, if MGM prevails on any aspect of its constitutional challenge in Washington, the CID at issue here in Nevada will be entirely mooted.

Moreover, applying the first-to-file rule in this case would advance "the interest of efficiency and judicial economy." *Bozic*, 888 F.3d at 1051-52. A dismissal would eliminate a duplicative proceeding, while still allowing the FTC to pursue enforcement of the CID through the

---

[3] In its Prayer for Relief in its Complaint, MGM seeks, amongst other things, a judgement that would "[p]ermanently enjoin the Commission and Chair Khan from enforcing the CID," "[d]eclare that MGM is not subject to the Safeguards Rule," "[d]eclare that MGM is not subject to the Red Flags Rule," and, "rescind the CID." *See* Complaint for Declaratory and Injunctive Relief at 20.

6

action in the U.S. District Court for the District of Columbia. To the extent the Court is inclined to transfer the case to Washington, D.C., such a transfer would likewise reduce the chance of inconsistent rulings and duplicative proceedings by consolidating all litigation between MGM and the Commission before a single court (and likely, a single District Judge). A stay pending resolution of the D.C. litigation would similarly advance efficiency and judicial economy. As noted above, the resolution of MGM's first-filed Complaint will bear directly on the enforceability of the Commission's CID. So, a stay of these proceedings pending the outcome of the first-filed case would prevent the Court and the parties from wasting resources litigating the Petition to Enforce the CID which may be invalidated by the District Court in Washington, D.C.

Finally, equitable considerations do not preclude the application of the first-to-file rule. That the Commission waited months to bring its follow-on action in a different forum is not evidence that MGM's choice of venue in Washington, D.C. is somehow inequitable or improper. Nor is the fact that MGM brought suit against the FTC as soon as the parties' dispute was ripe (as compared to the Commission, which waited for months following MGM's Complaint to bring this enforcement action). Indeed, MGM's choice of venue and the speed with which it acted show that MGM has diligently and conscientiously sought to protect its rights. The equities, therefore, pose no obstacle to the relief MGM seeks.

Because all three of the first-to-file rule elements are satisfied, transfer would enhance efficiency and serve judicial economy, and there is nothing inequitable about proceeding in Washington, D.C., the Court should dismiss this case, transfer it to Washington, D.C., where the parties are already engaged in active litigation, or stay the matter pending resolution of the D.C. litigation pursuant to the first-to-file rule.

**B.     Transfer is Also Appropriate Pursuant to 28 U.S.C. § 1404(a).**

To the extent the Court is inclined to transfer this matter, 28 U.S.C. § 1404(a) provides an additional, independently sufficient basis for such relief.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404 is "to prevent the waste

7

of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted). Motions to transfer venue are considered on "an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000), *cert. denied*, 531 U.S. 928 (2000). On its face, 28 U.S.C. § 1404(a) has two requirements: "(1) that the district to which the defendant seeks to have the action transferred is one in which the action might have been brought, and (2) that the transfer be for the convenience of the parties and witnesses, and in the interest of justice." *Ravin Crossbows, LLC v. Hunter's Mfg. Co., Inc.*, No. 21-2213, 2023 WL 2572288, at *2 (D. Nev. Mar. 17, 2023); *see also Tonkawa Tribe of Indians of Oklahoma v. Sci. Games Corp.*, No. 20-1637, 2021 WL 3847802, at *5 (D. Nev. Aug. 27, 2021). Here, transfer is appropriate because the Commission could have brought its action in the District of D.C., and the *Jones* factors weigh in favor of moving the case.

As an initial matter, venue is proper in the U.S. District Court for the District of Columbia. Venue for a petition to enforce compulsory Commission process is set out in 15 U.S.C. § 57b-1(e). That statute provides that the Commission may file such a petition in "any judicial district in which [the person resisting the compulsory process] resides, is found, or transacts business…." *Id.* Here, MGM transacts business in Washington, D.C., and therefore the Commission's petition to enforce could have been brought in that district, satisfying the first prong of the § 1404(a) transfer analysis.

Furthermore, convenience and the interest of justice also favor transfer to the District of Columbia. As noted above, courts in the Ninth Circuit weigh a wide-ranging set of factors to assess the propriety of a transfer pursuant to § 1404(a). *See Jones*, 211 F.3d at 498-99. At root, however, motions to transfer venue are considered on "an individualized, case-by-case consideration of convenience and fairness." *Id.* at 498. Here, this inquiry counsels in favor of transfer. The parties have extensive contacts with Washington, D.C., both as a general matter and with respect to the events giving rise to this litigation; and, the parties will have easy access to sources of proof in Washington, D.C., given that the Commissioners and other relevant personnel, such as the Secretary of the FTC who rejected MGM's Petition to Disqualify Chair Khan, are headquartered there. The

1 FTC's Rules of Practice and the financial services rules challenged in the complaint were
2 promulgated in Washington, D.C.
3       In addition, the interest of justice weighs in favor of transfer. MGM acted diligently to
4 vindicate its constitutional rights by bringing suit shortly after its dispute with the FTC ripened in
5 the District of Columbia. It should not now be penalized for having done so by being forced to
6 litigate in two separate courts, particularly where, as here, the Commission has no obvious
7 connection to Nevada. Under the circumstances, it would be both more convenient and fairer to
8 proceed in Washington, D.C., and transfer should, therefore, be ordered pursuant to
9 28 U.S.C. § 1404(a).

**C. If the Court Intends to Hear this Matter, the FTC's Motion for an Order to Show Cause for *Ex Parte* Relief is Inappropriate and the Motion Should be Denied on that Basis.**

12       Alternatively, if the Court retains jurisdiction over this matter, the FTC's Motion for an
13 Order to Show Cause should be denied because it violated the Local Rules of Practice for the
14 District of Nevada in significant respects.  The FTC filed its Motion without providing any notice
15 of the Motion to MGM and without articulating any legal or factual justification for proceeding in
16 secret. The FTC's *ex parte* request is, therefore, inappropriate and should be denied.
17       The Local Rules set out a series of clear requirements for *ex parte* motions, which the Rules
18 define as any "motion or application . . . that is filed with the court but is not served on the opposing
19 or other parties." LR IA 7-2(a). All such motions "must articulate the rule that permits *ex parte*
20 filing and explain why it is filed on an *ex parte* basis." LR IA 7-2(b). Here, the FTC filed its Petition
21 to Enforce and subsequent Motion without making any attempt to serve either on MGM. Indeed,
22 the Motion—the Proposed Order for which directs the Commission to serve the Petition on MGM,
23 but ***not the Motion***—makes clear that the FTC did not intend to advise MGM of the pendency of
24 the Motion or the onerous restrictions it would impose on MGM's ability to defend itself at any
25 show cause hearing.  In light of this decision not to make service (despite knowledge that the
26 undersigned have represented MGM in connection with this matter for nearly six months), the
27 Motion is *ex parte* and the Commission was therefore obligated by this Court's Local Rules of
28 Practice to identify a rule or statute permitting their *ex parte* filing and to provide an explanation

9

for why service on MGM should be excused. *See* LR 7-2(b) ("An *ex parte* motion or application must articulate the rule that permits *ex parte* filing and explain why it is filed on an *ex parte* basis."). Having failed to do either, the Motion is procedurally defective and should be denied.[4]

As a substantive matter, there is no justification for proceeding *ex parte*.[5] *See United States v. Kasper*, No. 22-0009, 2023 WL 1965522, at *2 (D. Nev. Feb. 13, 2023) (noting the limited circumstances under which *ex parte* relief is appropriate, including the threat of "immediate or irreparable injury," danger that notice might result in destruction of evidence, or where a party seeks a routine procedural order that cannot be obtained through a regularly noticed motion). First, the burden of explaining its conduct falls squarely on the FTC and its counsel and they have not met that burden.  Second, the FTC's attempt to obtain relief *ex parte* cannot be justified by a need to move quickly, as the parties' dispute over the CID ripened **months ago**, is ongoing in another court, and the FTC has made no other effort to enforce the CID in the intervening months. Third, the *ex parte* filing seeks a material and unjustified litigation advantage. As noted above, the FTC's proposed order to show cause would force MGM to challenge the Petition with both hands tied behind its back, effectively precluding it from offering evidence and testimony in support of its positions, flipping the burden of proof, and sharply limiting MGM's ability to raise legal defenses. *See* Proposed Order to Show Cause (Doc. No. 3-1). Such requests have no place in an *ex parte* motion. *See Maxson v. Mosaic Sales Sols. U.S. Operating Co., LLC*, No. 14-2116, 2015 WL 4661981, at *1-2 (D. Nev. July 29, 2015) (denying *ex parte* requests for failing to provide compelling reasons justifying the order, and noting that *ex parte* requests were "inherently unfair and pose a threat to the administration of justice").

---

[4] In the event this Court retains jurisdiction, which MGM respectfully urges the Court not to do, MGM reserves the right to further challenge the FTC Petition on the merits.

[5] The FTC's decision to proceed *ex parte* is unsupported by the FTC Act, which is the only authority the Commission references in support of its Motion. *See* 15 U.S.C. § 57b-1(e) (authorizing the Commission to "***serve upon [a] person***, a petition for an order . . . for the enforcement" of a CID (emphasis supplied)).

10

In light of the foregoing, the FTC's Motion should be denied. It has sought *ex parte* relief without complying with the Court's procedures for such motions, and sought extraordinary relief that has no place in an *ex parte* motion.

## IV.  CONCLUSION

Upon the forgoing, MGM respectfully requests that the Court dismiss, transfer, or stay the FTC's Petition to Enforce pending the resolution of the D.C. litigation and any subsequent appeal. Should the Court decline to do so, MGM asks in the alternative that the Court deny the FTC's Motion for an Order to Show Cause.

DATED this 26th day of June, 2024.

PISANELLI BICE PLLC

By: */s/ Todd L. Bice*
Todd L. Bice, Esq., #4534
Emily A. Buchwald, Esq., #13442
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

Brian J. Boyle, Esq.
(*pro hac vice forthcoming*)
DLA PIPER LLP
500 8th Street NW
Washington, DC 20004

Andrew Sacks, Esq.
(*pro hac vice forthcoming*)
DLA PIPER LLP
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104

Brett M. Feldman, Esq.
(*pro hac vice forthcoming*)
DLA PIPER LLP
1650 Market Street, Suite 5000
Philadelphia, PA 19103

*Attorneys for Respondent MGM Resorts International*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 26th day of June, 2024, I caused to be served via the Court's CM/ECF system true and correct copies of the above and foregoing document on all counsel of record.

                                    */s/ Kimberly Peets*
                                   An employee of Pisanelli Bice PLLC

12